UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**LEAH SCOTT,**

    **Plaintiff,**　　　　　　　　　　Federal Civil Action No.: 3:16-cv-719

**v.**

**EGLIN FEDERAL CREDIT UNION,**

    **Defendant.**
_____/

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO QUASH SUBPOENAS/MOTION FOR PROTECTIVE ORDER WITH SUPPORTING MEMORADUM OF LAW

COMES NOW Eglin Federal Credit Union (hereinafter referred to as "Defendant" or "Eglin"), by and through its undersigned attorneys, pursuant to Rule 26 of the Federal Rules of Civil Procedure and Local Rule 7.1 of the United States District Court for the Northern District of Florida and files its Response in Opposition to Plaintiff's Motion to Quash Subpoenas or Alternatively Motion for Protective Order With Supporting Memorandum of Law, and in support thereof states:

**RESPONSE IN OPPOSITION**

**A. Procedural History**

1.　On December 12, 2016, Defendant was served with Plaintiff's Complaint, which was filed with the Circuit Court of the First Judicial Circuit, in

1

and for Okaloosa County, Florida, alleging gender discrimination in employment. [Doc 8, Exhibit A]  The case was later removed to this Court.  [Doc 1]

**B. Summary of Response in Opposition**

2. The Plaintiff has filed a Motion to Quash Subpoenas or Alternatively Motion for Protective Order regarding third party subpoenas propounded by Defendant.  Defendant's subpoenas are proper, and must not be quashed, for two reasons:

> a. Plaintiff failed to confer with Defendant as required by Local Rule 7.1(b) of the United States District Court for the Northern District of Florida.
>
> b. The information sought in each subpoena is relevant, proportional to the needs of the case, and discoverable.

**C. Response**

3. On February 2, 2017, Plaintiff served Defendant with her responses to Defendant's First Request for the Production of Documents and First Set of Interrogatories.  In her responses to Defendant's First Set of Interrogatories, Plaintiff provided the names and addresses of a current physician treating Plaintiff as well as her current employer.  Additionally, she provided information regarding positions she had applied for after her separation from Defendant.  [Excerpt attached as Exhibit A]

4. Based on that information, Defendant drafted subpoenas for the production of documents directed to several of the entities identified in Plaintiff's interrogatory responses in order to obtain information regarding Plaintiff's mitigation of her damages following her separation from Defendant. On March 2, 2017, Defendant served its Prior Notice of Commanded Production on Plaintiff, providing information regarding each of the proposed subpoenas Defendant intended to serve and explaining, pursuant to Rule 45 of the Federal Rules of Civil Procedure, that the subpoenas would be served on March 6, 2017. [Doc 12, Exhibit A]

5. On March 6, 2017, having received no objection (or response of any kind) from Plaintiff, Defendant served its third-party subpoenas. [Doc 12, Exhibit A] Subpoenas were served on the following entities:

    a. **Compass Resorts**; where Plaintiff had a seasonal position following her separation from Defendant.

    b. **Old South Land Title**; Plaintiff's current employer.

    c. **Coastal Skin Surgery & Dermatology**; the only physician Plaintiff has seen in the last ten years, according to her discovery responses.

    d. **MidSouth Bank**; one of the 63 companies to which Plaintiff applied for employment following her separation from Plaintiff, according to her discovery responses.

  e. **Fountain, Shultz & Associates**; one of the 63 companies to which Plaintiff applied for employment following her separation from Plaintiff, according to her discovery responses.

  f. **B3H Corporation**; one of the 63 companies to which Plaintiff applied for employment following her separation from Plaintiff, according to her discovery responses.

  g. **Cornerstone Financial Consultants**; one of the 63 companies to which Plaintiff applied for employment following her separation from Plaintiff, according to her discovery responses.

  h. **Harrison Finance Company**; one of the 63 companies to which Plaintiff applied for employment following her separation from Plaintiff, according to her discovery responses.

6. On March 11, 2017, Plaintiff's counsel notified counsel for Defendant via e-mail that he objected to "any contact" with the Plaintiff's current employer, including the subpoena which had, at that point, already been served.

7. Counsel for both parties discussed, via e-mail, Plaintiff's objection to the subpoena to Plaintiff's current employer, Old South Land Title. Plaintiff supplied an Order from another case, <u>DeJesus v. Tender Touch Health Care Services,</u> for Defendant's review.[1] After several e-mail exchanges on this issue,

---

[1] A copy of this Order was attached to Plaintiff's Motion to Quash.

counsel for Defendant explained that the subpoena to Old South Land Title was significantly more narrow than the example provided by Plaintiff's counsel in DeJesus, and that Defendant would therefore be moving forward with the subpoena to Old South Land Title. Plaintiff replied that it would file a motion to quash, and on March 14, 2017, filed the Motion to Quash, or alternatively, Motion for Protective Order with this Court.

8. It is important to note that in the process of conferring about the validity of the subpoena, Plaintiff **only** raised concerns regarding Old South Land Title. At no time did Plaintiff indicate an objection or even a concern about any of the other subpoenas. [Exhibit B] However, in its Motion, Plaintiff objected to each and every subpoena issued by Defendant. Plaintiff's Motion should be denied due to his failure to meaningfully confer with Defendant's counsel.

9. Each subpoena issued by the Defendant is reasonably calculated to lead to the discovery of admissible evidence at trial, and is proportional to the needs of the case.

    a. First, Plaintiff's records from her current employer are directly relevant to her claims against Defendant for back pay and lost benefits. Eglin would be entitled to offset Plaintiff's interim earnings and the value of her current employee benefits against her claims for back pay and lost benefits. Moreover, records reflecting Plaintiff's application for employment, the dates on which she applied,

and the date on which she was hired are relevant for purposes of computing Plaintiff's claimed wage loss. Finally, insofar as Plaintiff has had pay increases as a consequence of a promotion, or pay decreases as a consequence of disciplinary demotion, such records pertaining to promotions or discipline are relevant to Plaintiff's claim for wage loss. Thus, the information sought in Defendants subpoena is relevant and discoverable.

    b. Second, Plaintiff's records from her current employer are directly relevant to her claim for emotional distress damages. For example, discipline or reprimands may explain the reason for any emotional distress that Plaintiff is currently experiencing. Additionally, if Plaintiff has required accommodations or leave under the Family Medical Leave Act as a result of her alleged emotional distress, those records would also be directly relevant to her claim for emotional distress damages.

 10. For the foregoing reasons, Eglin requests that this Court enter an Order denying Plaintiff's Motion to Quash or Alternatively Motion for Protective Order as to all subpoenas issued to date by Defendant.

## **MEMORANDUM OF LAW**

### I. **Scope of Discovery**

 The overall purpose of discovery under the Federal Rules is to require the disclosure of all relevant information so that the ultimate resolution of disputed

issues in any civil action may be based on a full and accurate understanding of the true facts, and therefore embody a fair and just result. See United States v. Proctor & Gamble Co., 356 U.S. 677, 682 (1958). In 2015, the language of Rule 26(b) of the Federal Rules of Civil Procedure was amended to read: "Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." While the language was changed, the effect of the Rule is primarily unchanged. "While discovery no longer extends to anything related to the 'subject matter' of the litigation, relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." Lightsquared Inc. v. Deere & Co., Cosby, 2015 U.S. Dist. LEXIS 166403, at *7 (S.D.N.Y. Dec. 10, 2015), citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351, (1978). Discovery is not limited to the issues raised by the pleadings because "discovery itself is designed to help define and clarify the issues." Oppenheimer, at 352. Information can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. Dunbar v. United States, 502 F.2d 506 (5th Cir.1974). The party resisting discovery has the burden to show that the requested discovery is not relevant and that the production of such discovery would be unduly burdensome.

LNV Corp. v. Branch Banking & Trust Co., 2013 WL 12174140, at *2 (N.D. Fla. Nov. 18, 2013).

## II. Subpoena to Plaintiff's Current Employer

### a. Limited Scope

When considering a subpoena seeking the production of documents, "if the documents are relevant and are sought for good cause they should be enforced unless the documents are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing." Covey Oil Co. v. Cont'l Oil Co., 340 F.2d 993, 997 (10th Cir. 1965). Here, the subpoena seeks limited documentation from Plaintiff's current employer that is clearly relevant. Plaintiff has failed to establish that the subpoena is "unreasonable, oppressive, annoying, or embarrassing." Id.

In a case such as this, where Plaintiff seeks back pay and damages for emotional distress purportedly arising from discrimination by Defendant, Defendant is entitled to subpoena Plaintiff's personnel records from her current employer. Here, the subpoena at issue requests the following information:

1) A job description of all positions held by Ms. Scott from May 2016 through the present;

2) All application materials, notes, or summaries relating to Ms. Scott's application for employment;

3) All disciplinary actions, including documentation of verbal coachings or counselings;

4) All pay records, including W-2 forms; and

8

> 5) Any documents relating to her termination or separation if such has occurred.
>
> This subpoena specifically includes any records (including emails and text messages) of any communications with or about Leah Scott, whether such communications were with Ms. Scott, other departments or staff of your organization, Ms. Scott, or any third parties regarding the areas listed above.

In its Motion to Quash, the Plaintiff argues that the subpoena is facially overbroad, but bases that argument, in part, on a misrepresentation of the final paragraph of the subpoena. Plaintiff wrongfully describes the final paragraph of the subpoena as an additional request; it is not. The final paragraph is simply a reminder of the various forms in which the items requested in paragraphs 1-5 can be found, and specifically includes the language "regarding the areas listed above" to make it abundantly clear that it is not a separate request, but simply a qualifier applying to the enumerated areas of inquiry listed above.

This subpoena does not request all documents relating to Ms. Scott, or even her entire personnel file. Defendant has listed specific areas of documents which are relevant. Consider the items normally maintained in a personnel file which have not been requested: benefit information, investigations, evaluations and performance reviews, trainings, or policies and procedures, to name a few. Although many courts have held that seeking all documents relating to an employee is generally overbroad,

9

when a request is tailored to specific areas of documents, it will be enforced. Zeller v. S. Cent. Emergency Med. Servs., Inc., 2014 WL 2094340, at *6 (M.D. Pa. May 20, 2014); Saller v. QVC, Inc., 2016 U.S. LEXIS 82895 (E.D. Pa. June 24, 2016) ("In requests two through five, Defendant seeks information related to Plaintiff's job performance…, her attendance and compensation records…, her benefits…, and her termination or cessation of work, if applicable... Defendant shall be permitted to subpoena Plaintiff's post-termination employers to obtain these documents.")

### b. Relevance

Documents relating to Plaintiff's current employment are particularly relevant in cases where, like this one, the Plaintiff is seeking front and back pay, among other types of damages. Hood v. Burke County School District, 2016 WL 427102, at *3 (S.D. Ga. February 3, 2016) ("Plaintiff's employment and academic records are discoverable because she alleges Defendants caused her to suffer 'diminished employment opportunities' and seeks an award of front pay in connection with all four claims."); and Katz v. Nat'l Bd. of Med. Examiners, 2016 WL 2744823, at *4 (M.D. Pa. May 10, 2016) ([A]cademic and employment records are clearly relevant to his claims for lost income and diminished employment opportunities.") When a defendant is prevented from obtaining information regarding the plaintiff's job prospects for future work, job history, or academic credentials, the defendant "cannot adequately defend itself against the allegation that discriminatory and

10

retaliatory actions have diminished Plaintiff's employment opportunities." Id., at *8.

Plaintiff concedes in her Motion to Quash that information regarding Plaintiff's mitigation of damages is relevant information which could be obtained from her current employer. [Doc 12, page 5] Plaintiff, in conferring prior to filing the instant Motion, suggested that Defendant could obtain Plaintiff's pay records from her directly, that no other information was relevant to her mitigation of damages, and that the subpoena to her current employer could therefore be quashed. That is simply not true. Information regarding Plaintiff's application process, job performance, and promotions or demotions are all relevant to mitigation of damages. The United States District Court for the Middle District of Pennsylvania considered a similar issue and held that the post-termination employment records were relevant and discoverable:

> The Court finds that Plaintiff's post-termination employment records are relevant as to the issue of mitigation of damages, and specifically, the amount that Plaintiff could have earned with reasonable diligence. The employment records sought by Defendants from Plaintiff's current and prospective employers are likely to contain the information sought by Defendants, and a request for these documents thus is reasonably calculated to lead to the discovery of admissible evidence on the issue of mitigation.

Zeller v. S. Cent. Emergency Med. Servs., Inc., 2014 WL 2094340, at *5 (M.D. Pa. May 20, 2014). Here, the Plaintiff has agreed that this is an area in which the

11

current employer has relevant information; the Defendant is therefore entitled to that information.

### c. **Impact on Current Employment**

Plaintiff also argues that the subpoena will have some negative impact on her current position but has failed to specify what harm might come to Plaintiff. Because Plaintiff failed to object until after the date of service of the subpoena (of which Plaintiff was informed through the Prior Notice), Old South Land Title has already received the subpoena and is therefore already aware of the pending litigation. Despite her employer being aware of the litigation and the subpoena directed to it specifically, Plaintiff could not provide any specific information regarding harm or disruption that has occurred, or likely will occur, as a result of the subpoena. Speculative harm, like that referenced in Plaintiff's Motion, is not sufficient to outweigh relevancy.

> Plaintiff's employment records with her current employer are undeniably relevant on their face for a variety of reasons—statements she may have made regarding her past employment, information relating to her potential economic damages, information regarding potential on-going emotional damages, etc. Despite the fact that there is a potential for Plaintiff to be annoyed, embarrassed or harassed as a result of the subpoena (see Doc. 43, at 2), Plaintiff does not—and cannot—establish that this will actually occur. Thus, this potential annoyance to Plaintiff does not outweigh Defendant's showing of the obvious relevance of the information requested.

Kear v. Kohl's Dep't Stores, Inc., 2013 WL 628331, at *3 (D. Kan. Feb. 20, 2013). Because the documents sought in this case are clearly relevant, and because the Plaintiff has failed to provide sufficient information on the "harm" the subpoena has done or will do, the subpoena must be enforced.

### d. Chilling Effect

Plaintiff also argues that by enforcing the subpoena, the Court would be approving a discovery practice which would chill litigation. In support of its position Plaintiff provides a one-sentence argument and references two cases, neither of which relate to a subpoena for information from a plaintiff's current employer. Once again, the Plaintiff has provided no evidence or factual support for its argument, and has merely provided a conclusory statement that Defendant's subpoenas "violate public policy." [Doc 12, page 12]

As discussed in detail above, Defendant's subpoenas are narrowly tailored to seek relevant evidence. The subpoenas do not violate public policy, and Plaintiff provides no support for her position that it does, other than mere conclusory statements.

### e. After-Acquired Evidence Rule

Plaintiff argues that Defendant's subpoenas are impermissible under the after-acquired evidence rule. However, several of the cases provided by Plaintiff relate to the inadmissibility of evidence under the after-acquired evidence rule, not whether

13

that information is discoverable.  The Defendant is entitled to the information sought in each subpoena.

### f.  Other Subpoenas

Plaintiff's Motion, or alternatively the sections of the Motion directed to the other seven subpoenas, should be denied due to Plaintiff's failure to confer, in violation of Local Rule 7.1(B) of the United States District Court for the Northern District of Florida, which provides in part:

> Before filing a motion raising an issue, an attorney for the moving party must attempt in good faith to resolve the issue through a meaningful conference with an attorney for the adverse party. The adverse party's attorney must participate in the conference in good faith. The conference may be conducted in person, by telephone, in writing, or electronically, but an oral conference is encouraged. An email or other writing sent at or near the time of filing the motion is not a meaningful conference.

Because Plaintiff failed to meaningfully confer, the Motion should be dismissed. United States v. Cimino, 219 F.R.D. 695, 696 (N.D. Fla. 2003) ("Counsel for movants failed to confer before filing this motion as required by Local Rule 7.1(B). The motion is denied without prejudice for that reason."); and Lawson v. McDonough, 2006 WL 2927434, at *2 (N.D. Fla. Oct. 10, 2006) ("Thus, Aleph's motion (doc. 74) is DENIED for failure to confer prior to filing the motion as required by the local rules…")

Objections to the remaining subpoenas are also moot, as each of the subpoena receipients have already complied with the subpoena requests.

### III.   Conclusion

WHEREFORE, for the foregoing reasons, Defendant respectfully requests that this Court enter an Order denying Plaintiff's Motion To Quash Or, In The Alternative, For Protective Order.

DATED this 28th day of March, 2017.

                              Respectfully submitted,

                              CONSTANGY, BROOKS,
                              SMITH & PROPHETE, LLP
                              200 W. Forsyth Street, Suite 1700
                              Jacksonville, Florida 32202
                              Telephone: (904) 356-8900
                              Facsimile: (904) 356-8200

                              By:  /s/ Ariel Cook
                                    Gary R. Wheeler
                                    Florida Bar No.: 0131865
                                    gwheeler@constangy.com
                                    Ariel P. Cook
                                    Florida Bar No.: 0046812
                                    acook@constangy.com

                                    Attorneys for Defendant,
                                    Eglin Federal Credit Union

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true copy of the above has been e-filed and served via email this 28th day of March, 2017 upon the following:

>Marie A. Mattox, Esq. and
>Adam Ellis, Esq.
>310 East Bradford Road
>Tallahassee, FL 32303
>Marie@mattoxlaw.com
>Adam@mattoxlaw.com
>
>/s/ Ariel Cook
>Attorney